An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

PEDRO RODRIGUEZ,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 63423

FILED

SEP 1 1 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

*ORDER OF AFFIRMANCE*

This is an appeal from a judgment of conviction in a death penalty case. Second Judicial District Court, Washoe County; Brent T. Adams, Judge.

Appellant Pedro Rodriguez, Robert Paul Servin, and Brian Lee Allen, robbed and murdered Kimberly Fondy on April 5, 1998. Rodriguez and Servin were tried jointly and found guilty of first-degree murder with the use of a deadly weapon and robbery with the use of a deadly weapon. The jury imposed a sentence of death on Rodriguez.[1] We affirmed the convictions and sentences on appeal. *Rodriguez v. State*, 117 Nev. 800, 32 P.3d 773 (2001). Rodriguez successfully challenged his sentence in a post-conviction petition for a writ of habeas corpus and was granted a new penalty hearing. *See Rodriguez v. State*, Docket No. 48291 (Order Affirming in Part, Reversing in Part and Remanding, November 3, 2009). At a new penalty hearing, a jury again imposed a death sentence. In this appeal, Rodriguez raises issues related to the second penalty hearing.

---

[1]Rodriguez was sentenced to two equal and consecutive terms of 72 to 180 months for robbery with the use of a deadly weapon.

15-27520

*Motion to relieve counsel*

Rodriguez argues that the district court erred in denying his motion to relieve counsel because counsel failed to negotiate for a better plea deal than had been offered by the State. He further argues that the district court's inquiry into his motion was inadequate and improperly conducted in front of opposing counsel. He also contends that the district court should not have forced him to waive his attorney-client privilege for the hearing and then continue to trial with the same counsel when the motion was denied.

We conclude that the district court did not abuse its discretion in denying the motion to withdraw or discharge counsel. *See Young v. State*, 120 Nev. 963, 968, 102 P.3d 572, 576 (2004) (reviewing the "denial of a motion for substitution of counsel for abuse of discretion"). Despite his allegation of a conflict of interest, Rodriguez did not demonstrate that counsel's loyalty was compromised. Rodriguez and counsel disagreed over how to best obtain a favorable plea offer from the State. This difference of opinion did not rise to the level of a "complete collapse of the attorney-client relationship." *Id.* at 969, 102 P.3d at 576. Further, as the State clearly indicated that there was no possibility of a more lenient plea offer, their disagreement was essentially moot. In addition, the district court's inquiry was sufficient to address the concerns raised by Rodriguez and counsel, as the district court addressed those concerns over several hearings and considered the statements of Rodriguez, counsel, and the district attorney. Rodriguez's waiver of his attorney-client privilege was necessary to determine the extent of the alleged conflict. The inquiry was

not broader than necessary to address the concerns over the plea negotiations, so it did not hinder Rodriguez's ability to litigate the penalty hearing. Therefore, the district court adequately inquired into the grounds for the motion to withdraw, Rodriguez's reason for seeking withdrawal was not meritorious, and the conflict did not prevent counsel from presenting an adequate defense or result in an unjust verdict. *See id.* (noting that this court considers "'(1) the extent of the conflict; (2) the adequacy of the inquiry; and (3) the timeliness of the motion'" when reviewing a district court decision (quoting *United States v. Moore*, 159 F.3d 1154, 1158-59 (9th Cir. 1998)))).

*Juror challenge*

Rodriguez argues that the district court erred in denying his challenge to potential juror McFarlin. We disagree. McFarlin's initial statements indicated that (1) he believed that the death penalty was appropriate for more than just murder cases and (2) death was the appropriate sentence for murder and it was the role of the defense to prove otherwise. Nevertheless, he acknowledged that he could listen to the evidence and follow the instructions of the district court and the district court instructed him to not presume that death is the appropriate penalty. While McFarlin expressed strong feelings about the use of the death penalty, the trial court's assessment of the juror's state of mind is entitled to great deference. *Walker v. State*, 113 Nev. 853, 865, 944 P.2d 762, 770 (1997) (recognizing that when a "prospective juror's responses are equivocal, *i.e.*, capable of multiple inferences, or conflicting, the trial court's determination of that juror's state of mind is binding.'" (quoting

*People v. Livaditis*, 831 P.2d 297, 303 (Cal. 1992))). Therefore, Rodriguez did not demonstrate that the district court abused its discretion in denying his challenge for cause. *Weber v. State*, 121 Nev. 554, 580, 119 P.3d 107, 125 (2005). Moreover, although Rodriguez was compelled to use a peremptory challenge to exclude McFarlin, we held in *Blake v. State* that "the fact that a defendant had to use a peremptory challenge to achieve that result does not mean that the defendant was denied his right to an impartial jury," where the jury actually seated was impartial. 121 Nev. 779, 796, 121 P.3d 567, 578 (2005). Rodriguez does not allege that any juror actually empanelled was unfair or biased, and while he encourages this court to overrule *Blake*, he has not proffered a sufficient reason to depart from this precedent.

*Evidence of codefendants' sentences*

Rodriguez argues that the district court erred in denying his motion to admit evidence of the more lenient sentences imposed for his two codefendants. We discern no abuse of discretion. *See Ramet v. State*, 125 Nev. 195, 198, 209 P.3d 268, 269 (2009) (reviewing the admission of evidence for abuse of discretion). We recognize, as Rodriguez points out, that some jurisdictions consider a codefendant's sentence relevant to a jury's sentencing decision. *See, e.g., Ex parte Burgess*, 811 So. 2d 617, 628 (Ala. 2000); *State v. Marlow*, 786 P.2d 395, 402 (Ariz. 1989); *Beardslee v. Woodford*, 358 F.3d 560, 579-80 (9th Cir. 2004). However, there is no mandatory authority requiring the admission of such evidence, and we have reiterated the importance of individualized sentencing that takes into account a defendant's character, record, and the circumstances of the offense. *Browning v. State*, 124 Nev. 517, 526, 188 P.3d 60, 67 (2008); *Harte v. State*, 116 Nev. 1054, 1069, 13 P.3d 420, 430 (2000). Moreover,

Rodriguez and his codefendants were not similarly situated. Allen pleaded guilty to avoid the death penalty. *Servin v. State*, 117 Nev. 775, 793, 32 P.3d 1277, 1290 (2001). Servin was sentenced to death, but his sentence was vacated as excessive based on his youth at the time of the crime, his expression of remorse, the influence of drugs at the time of the crime, and his lack of a significant criminal background. *Id.* at 793-94, 32 P.3d at 1290. Conversely, Rodriguez did not plead guilty; he was the oldest of the three participants in the crime and, as he had known the victim prior to the crime, the apparent orchestrator of the crime; and his criminal history included a violent sexual assault on a 14-year-old victim. Therefore, the district court did not abuse its discretion in denying the motion to admit this evidence.

*Motion to set aside sentence*

Rodriguez contends that the district court erred in denying his motion to set aside his death sentence because it is excessive considering that he did not shoot the victim and his codefendants received life sentences. We disagree. Rodriguez did not assert that there is insufficient evident to support the jury's decision, NRS 175.381(2) (permitting a district court to set aside verdict where insufficient evidence supports it), or that he has an intellectual disability, NRS 175.554(5) (permitting the district court to entertain a motion to set aside a death sentence based on intellectual disability). The district court did not otherwise have discretion to set aside his sentence. *See Hardison v. State*, 104 Nev. 530, 534-35, 763 P.2d 52, 55 (1988) ("[A]fter a jury has assessed a penalty of death, the judge has no discretion and must enter judgment according to the verdict of the jury.").

*Constitutionality of his death sentence*

Rodriguez asserts that because the evidence shows that Servin fired the shots that killed the victim and there have been so few executions involving defendants who did not perform the actual killing for which they were convicted, his sentence appears arbitrary and capricious and therefore unconstitutional. We disagree. The record indicates that Rodriguez intended that lethal force be employed or participated in the robbery while exhibiting a reckless indifference to the Fondy's life. *See Guy v. State*, 108 Nev. 770, 783-84, 839 P.2d 578, 587 (1992) ("'To receive the death sentence, [a defendant] must have, himself, killed, attempted to kill, intended that a killing take place, intended that lethal force be employed or participated in a felony while exhibiting a reckless indifference to human life.'" (quoting *Doleman v. State*, 107 Nev. 409, 418, 812 P.2d 1287, 1292-93 (1991))); *accord Tison v. Arizona*, 481 U.S. 137, 158 (1987) (holding that "major participant in the felony committed, combined with reckless indifference to human life" is sufficient to satisfy Eighth Amendment requirements for imposing death penalty). Rodriguez knew Fondy and enough information about her financial condition to believe that her safe contained a considerable sum of cash. He was undoubtedly aware that she was paralyzed and ambulated with the use of a wheelchair. He and two other assailants entered Fondy's home armed with two firearms. Considering Fondy's inability to resist the overwhelming force brought to bear in this robbery, it is evident that Rodriguez and his confederates intended to employ lethal force or effect the felony with a reckless indifference to her life. Moreover, Rodriguez and his codefendants' statements after the crime indicate that they intended a killing take place. In bragging about the crime later that

night, Rodriguez stated, "[w]e did it, fool." Therefore, the record is sufficient to demonstrate that Rodriguez had the necessary culpability for a constitutionally imposed death sentence.[2]

*Mandatory review*

NRS 177.055(2) requires that this court review every death sentence and consider whether (1) sufficient evidence supports the aggravating circumstances found, (2) the verdict was rendered under the influence of passion, prejudice or any arbitrary factor, and (3) the death sentence is excessive. First, sufficient evidence supported the three aggravating circumstances found—the murder was committed to avoid lawful arrest, the murder involved torture and/or mutilation, and Rodriguez had a prior conviction for a felony involving violence. Second, nothing in the record indicates that the jury reached its verdict under the influence of passion, prejudice, or any arbitrary factor. And third, considering Rodriguez's role in orchestrating the crime, during which considerable violence was visited on a vulnerable victim, Rodriguez's prior sexual assault conviction, and the evidence in mitigation, we conclude that Rodriguez's sentence was not excessive.

---

[2]The jury found that the murder was committed to avoid or prevent a lawful arrest, the murder involved torture or mutilation, and that Rodriguez had been previously convicted of a felony crime involving the use or threat of violence. The jury had been instructed on the statutory mitigating circumstances pursuant to NRS 200.035. The record does not indicate that the jury found any mitigating circumstances. The jury further concluded that any mitigating circumstance or circumstances were not sufficient to outweigh the aggravating circumstances found and sentenced Rodriguez to death.

Having considered Rodriguez's contentions and concluded that they lack merit, we

ORDER the judgment of conviction AFFIRMED.

_____, C.J.
Hardesty

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Gibbons


cc:    Hon. Brent T. Adams, District Judge
       David Kalo Neidert
       Attorney General/Carson City
       Washoe County District Attorney
       Washoe District Court Clerk

PICKERING, J., with whom CHERRY and SAITTA, JJ., agree, dissenting:

We respectfully dissent.

In a death penalty case, it is "desirable for the jury to have as much information before it as possible when it makes the sentencing decision." *Gregg v. Georgia*, 428 U.S. 153, 204 (1976). At his penalty hearing, Rodriguez sought to introduce evidence of the life sentences that his two accomplices, Robert Servin and Brian Allen, received. Initially, the district judge deemed this evidence relevant and admissible, then reversed himself and excluded it. We recognize the split of authority that exists nationally on the admissibility of accomplice sentences in a death penalty hearing, *see Postelle v. State*, 267 P.3d 114, 140-41 (Okla. Crim. App. 2011) (collecting cases), and that ordinarily, the admission or exclusion of evidence is entrusted to the sound discretion of the district court, which an appellate court will not reverse absent abuse. But unless we are prepared to hold such evidence per se inadmissible—and this is not the law in Nevada, *see Flanagan v. State*, 107 Nev. 243, 247-48, 810 P.2d 759, 762 (1991), *vacated by Moore v. Nevada*, 503 U.S. 930 (1992)—Rodriguez's sentencing jury should have been told that the actual shooter, Servin, received a life sentence, as did Allen, his accomplice. We recognize that Rodriguez was 19 and had a prior violent felony in his background, whereas Servin and Allen were 16 and 17, respectively, without significant criminal histories. Nonetheless, the life sentences Servin and Allen received were relevant to the jury's determination of whether death was an appropriate sentence for Rodriguez. Since evidence of Servin's and Allen's participation was already before them, the evidence did not pose a significant danger of misleading the jury or delaying the proceeding. And, given that Rodriguez was not the shooter and may have been convicted on

a felony murder theory,[1] we cannot say that the district court's failure to admit this evidence was harmless.

The jury must "be able to consider and give effect to all relevant mitigating evidence." *Boyde v. California*, 494 U.S. 370, 377 (1990). Mitigation evidence includes "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett v. Ohio*, 438 U.S. 586, 604 (1978). The majority of this court has joined jurisdictions that have concluded that an accomplice's sentence does not relate to a defendant's character or record nor is it a circumstance of the offense. *See Brogdon v. Blackburn*, 790 F.2d 1164, 1169 (5th Cir. 1986) (concluding that codefendant's sentence not relevant to defendant's character or record); *People v. Moore*, 253 P.3d 1153, 1181 (Cal. 2011) (similar); *Crowder v. State*, 491 S.E.2d 323, 325 (Ga. 1997) (similar); *State v. Roache*, 595 S.E.2d 381, 426 (N.C. 2004) (similar); *State v. Charping*, 508 S.E.2d 851, 855 (S.C. 1998) (similar); *Saldano v. State*, 232 S.W.3d 77, 100 (Tex. Crim. App. 2007) (similar). But reasonable minds can disagree, and several jurisdictions consider disparity in codefendants' sentences to be mitigating evidence. *See Ex parte Burgess*, 811 So. 2d 617, 628 (Ala. 2000) (considering state statute that requires proportionate sentencing in

---

[1]Juries often reject the death penalty in cases where the defendant "did not commit the homicide" or "was not present when the killing took place." *Enmund v. Florida*, 458 U.S. 782, 795 (1982). In fact, as the Court observed in *Enmund*, "only a small minority of jurisdictions-eight-allow the death penalty to be imposed solely because the defendant somehow participated in a robbery in the course of which a murder was committed," and less than 2% of those executed between 1954 and 1982 were nontriggermen. *Id.* at 792.

concluding that lenient treatment of accomplices was mitigating factor); *State v. Marlow*, 786 P.2d 395, 402 (Ariz. 1989) (similar); *State v. Ferguson*, 642 A.2d 1267, 1269 (Del. Super. Ct. 1992) (similar); *see also* 18 U.S.C. § 3592(a)(4) (2006) ("In determining whether a sentence of death is to be imposed on a defendant, the finder of fact shall consider any mitigating factor, including the following: (4) Equally culpable defendants.—Another defendant or defendants, equally culpable in the crime, will not be punished by death.").

Just as the State may present evidence about matters unrelated to aggravating circumstances, a defendant is not limited to presenting only mitigating evidence. A capital sentencing hearing has two distinct phases: an "eligibility phase," during which the jury narrows those defendants eligible for the death penalty, and a "selection phase," during which the jury decides "whether to impose a death sentence on an eligible defendant." *Summers v. State*, 122 Nev. 1326, 1336, 148 P.3d 778, 785 (2006) (Rose, J., concurring in part and dissenting in part); *see also Kansas v. Marsh*, 548 U.S. 163, 173-74 (2006) (noting that capital sentencing procedures "must: (1) rationally narrow the class of death-eligible defendants; and (2) permit a jury to render a reasoned, individualized sentencing determination based on a death-eligible defendant's record, personal characteristics, and the circumstances of [the] crime"). The jury's discretion must be channeled when determining whether aggravating circumstances exist and whether any circumstances that are found are outweighed by any mitigating circumstances found, but should be broadened to allow an individualized determination of whether death is an appropriate sentence. *Summers*, 122 Nev. at 1337, 148 P.3d 785. As part of this individual determination, "evidence may be

presented . . . *on any other matter* which the court deems relevant to the sentence, whether or not the evidence is ordinarily admissible." NRS 175.552(3) (emphasis added). As evidence relevant to mitigation has been "broadly defined," we have noted that "this provision is of little practical benefit to the defendant." *Hollaway v. State*, 116 Nev. 732, 746, 6 P.3d 987, 997 (2000). But it is not without any benefit.

In our view, the evidence concerning Servin's and Allen's sentences is relevant to the selection phase of the penalty hearing. The death penalty is reserved for those defendants who are "the worst of the worst." *Roper v. Simmons*, 543 U.S. 551, 568 (2005) ("Capital punishment must be limited to those offenders who commit a narrow category of the most serious crimes and whose extreme culpability makes them the most deserving of execution." (internal quotation marks)). Capital juries are a critical "link between contemporary community values and the penal system." *Gregg*, 428 U.S. at 181 (quoting *Witherspoon v. Illinois*, 391 U.S. 510, 519 n.15 (1968)). They use the contemporary values to assess a defendant's moral culpability and impose an appropriate punishment. *See People v. Karis* 758 P.2d 1189, 1204 (Cal. 1988) ("In weighing the appropriate penalty, deciding between death and life imprisonment without possibility of parole, the jury performs a normative function, applying the values of the community to the decision after considering the circumstances of the offense and the character and record of the defendant."); *see also Watson v. State*, 130 Nev., Adv. Op. 76, 335 P.3d 157, 172-74 (2014) (noting several factors, including moral culpability, as relevant to a capital sentencing determination). This selection process is important to maintaining a system where there are meaningful distinctions between those cases where the death penalty is imposed and

the cases where it is not imposed. *See Callins v. Collins*, 510 U.S. 1141, 1147 (1994) (Blackmun, J., dissenting) (noting that penalty scheme requires a "'meaningful basis for distinguishing the few cases in which [the death penalty] is imposed from the many cases in which it is not'" (alteration in original) (quoting *Furman v. Georgia*, 408 U.S. 238, 313 (1972) (White, J., concurring))). Accordingly, we owe jurors a duty to present all the information necessary to properly effect contemporary community values in the case at hand. *See also ABA Principles for Juries and Jury Trials*, Principle 13 (2005) ("The court and parties should vigorously promote juror understanding of the facts and the law."). And where multiple defendants are responsible for the criminal conduct which resulted in a death, consideration of the moral culpability of those other defendants and the penalties levied against them, to the extent that information is available, can help the jury to make a reasoned and moral judgment about whether death is appropriate for any of the perpetrators. *See Simmons v. South Carolina*, 512 U.S. 154, 172 (1994) ("The Eighth Amendment entitles a defendant to a jury capable of a reasoned moral judgment about whether death, rather than some lesser sentence, ought to be imposed.") (Souter, J., concurring); *United States v. Gabrion*, 719 F.3d 511, 524 (6th Cir. 2013) (Mitigation evidence relating to "whether '[a]nother defendant or defendants, equally culpable in the crime, will not be punished by death' . . . does not measure the defendant's culpability itself, but instead considers—as a moral data point—whether that same level of culpability, for another participant in the same criminal event, was thought to warrant a sentence of death. Hence this factor likewise addresses whether the defendant's culpability warrants death." (alteration in original) (quoting 18 U.S.C. § 3592(a)(4) (2012))). This court

has even considered evidence of a codefendant's sentence to be "proper and helpful" for the jury's consideration during a capital penalty hearing when that evidence was offered by the State. *Flanagan*, 107 Nev. at 248, 810 P.2d at 762.

We further conclude that the evidence did not pose a danger of misleading the jury. *See* NRS 48.035(1) ("Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury."). All the perpetrators were teenagers. They had not developed such lengthy social and criminal histories that explaining the differences between them would have taken the presentation of evidence in this case too far afield. In fact, during oral argument the State could not provide a single reason why admission of this evidence would cause undue delay or confusion, and the majority was able to condense the key reasons for Allen's and Servin's sentences to less than half of a paragraph: "Allen pleaded guilty to avoid the death penalty. Servin was sentenced to death, but his sentence was vacated as excessive based on his youth at the time of the crime, his expression of remorse, the influence of drugs at the time of the crime, and his lack of significant criminal background." (citations omitted). But even if the majority were correct about delays, "death is different," *Gregg*, 428 U.S. at 188, and the criminal justice system owes the utmost care to capital defendants *and* the jurors entrusted with the unenviable task of sentencing them. *Zant v. Stephens*, 462 U.S. 862, 884-85 (1983) ("[B]ecause there is a qualitative difference between death and any other permissible form of punishment, 'there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case.'" (quoting *Woodson v. North*

*Carolina*, 428 U.S. 280, 305 (1976))). Therefore, we conclude that the district court abused its discretion in denying Rodriguez's motion to admit evidence concerning his accomplices' sentences. *See Ramet v. State*, 125 Nev. 195, 198, 209 P.3d 268, 269 (2009) (reviewing the admission of evidence for abuse of discretion).

We further conclude that this error was not harmless, *see Newman v. State*, 129 Nev., Adv. Op. 24, 298 P.3d 1171, 1181 (2013) ("A nonconstitutional error, such as the erroneous admission of evidence at issue here, is deemed harmless unless it had a substantial and injurious effect or influence in determining the jury's verdict." (internal quotation marks omitted)), and cannot withstand our mandatory review under NRS 177.055. Rodriguez, Servin, and Allen robbed the victim. Servin and Allen brought weapons and Servin stated that he was prepared to shoot the victim if need be. Rodriguez was unarmed. After robbing the victim, Servin shot her to death while Rodriguez and Allen were outside the residence. Rodriguez was charged under both the premeditated and felony-murder theories of liability. The verdicts do not indicate under which theory Rodriguez was convicted, but it appears reasonably certain that the jury held Rodriguez "strictly accountable for the consequences of perpetrating a felony," under the felony-murder theory. *Sanchez-Dominguez v. State*, 130 Nev., Adv. Op. 10, 318 P.3d 1068, 1075 (2014); *see State v. Contreras*, 118 Nev. 332, 334, 46 P.3d 661, 662 (2002) ("The felonious intent involved in the underlying felony is deemed, by law, to supply the malicious intent necessary to characterize the killing as a murder, and . . . no proof of the traditional factors of willfulness, premeditation, or deliberation is required for a first-degree murder conviction."). In our view, it is reasonably unlikely that the jury would

have sentenced Rodriguez—a nonshooter—to death if it had the benefit of the knowledge that the other perpetrators, who were equally or more morally culpable for the murder, received life sentences. Consequently, we would reverse and remand for a new penalty hearing.

_____, J.
Pickering

We concur:

_____, J.
Cherry

_____, J.
Saitta