IN THE SUPREME COURT OF THE STATE OF NEVADA

NATHANAEL BURTON SMITH,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 79844

FILED

NOV 13 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

*ORDER OF AFFIRMANCE*

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of two counts of grand larceny and three counts of burglary.[1] Second Judicial District Court, Washoe County; Kathleen M. Drakulich, Judge. Appellant Nathanael Smith raises five contentions on appeal.

*Sufficiency of the evidence*

First, Smith argues that insufficient evidence supports his convictions. When reviewing the sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. State*, 443 U.S. 307, 319 (1979); *see also Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998). A jury's verdict will not be disturbed on appeal where sufficient evidence supports its verdict. *See Bolden v. State*, 97 Nev. 71, 73, 624 P.2d 20, 20 (1981).

The State presented multiple surveillance videos of the three burglaries. The videos depict two men entering the casino and tracks their

---

[1]Pursuant to NRAP 34(f)(1), we have determined that oral argument is not warranted in this appeal.

20-41513

movement to a ballroom where they take equipment and tools and then leave the premises. One video shows the men entering the casino property on foot. The other two videos show the men arriving together in two different vehicles. Law enforcement obtained the license plate numbers for each vehicle and DMV records showed both vehicles were registered to Smith. The investigating detective identified Smith and his accomplice Fernando Valle as the men depicted in the videos. Further, the State presented evidence that Valle pawned several of the stolen items. Viewing this evidence in the light most favorable to the State, a rational trier of fact could have found each essential element of burglary and grand larceny beyond a reasonable doubt. *See* NRS 205.060(1) (defining burglary); NRS 205.220(1) (defining grand larceny); *see also McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992) ("[I]t is the jury's function, not that of the [reviewing] court, to assess the weight of the evidence and determine the credibility of witnesses.").

*Jury instructions*

Next, Smith argues that the district court erred by rejecting his proposed adverse inference instruction regarding law enforcement's failure to gather material evidence. "The district court has broad discretion to settle jury instructions, and this court reviews the district court's decision for an abuse of that discretion or judicial error." *Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005).

Smith contends that the district court should have given his proffered instruction because of law enforcement's gross negligence in failing to collect physical evidence and not conducting fingerprint or DNA testing. *See Daniels v. State*, 114 Nev. 261, 267, 956 P.2d 111, 115 (1998) ("When gross negligence is involved, the defense is entitled to a presumption that the evidence would have been unfavorable to the State."). Specifically,

Smith contends that the investigating detective did not collect or test a hammer and a damaged door lock from the scene of the burglaries. Even assuming forensic testing would not have linked Smith to the crimes, he did not demonstrate materiality, i.e., that there was a reasonable probability that the result of the trial would have been different. *See id.* (providing that a defendant must first show that the uncollected evidence was material, "meaning that there is a reasonable probability that, had the evidence been available to the defense, the result of the proceedings would have been different"). Moreover, the lead detective testified that he did not collect fingerprint evidence because he already identified Smith as the suspect, and, due to the public nature of the crime scene, obtaining useful fingerprints was unlikely. This testimony supports, at most, mere negligence, which would only permit Smith to "examine the prosecution's witnesses about the investigative deficiencies." *Id.* And Smith thoroughly examined the detective about the perceived deficiencies in his investigation. Therefore, we conclude the district court did not abuse its discretion by rejecting Smith's proffered instruction. *See Jackson v. State*, 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001) ("An abuse of discretion occurs if the district court's decision is arbitrary or capricious or if it exceeds the bounds of law or reason.").

*Admission of Smith's jail phone calls*

Next, Smith argues that the district court abused its discretion in denying his motion to exclude recordings of his jail phone calls during the State's rebuttal case because the State had not timely disclosed the evidence. We review a district court's admission of rebuttal evidence for an abuse of discretion. *See Lopez v. State,* 105 Nev. 68, 81, 769 P.2d 1276, 1285 (1989).

NRS 174.235(1)(a) requires the State to allow inspection of "[w]ritten or recorded statements or confessions made by the defendant." In addition, the State has an ongoing obligation to promptly notify the defendant about the existence of additional material encompassed by NRS 174.235. *See* NRS 174.295(1). If the State fails to meet that obligation, the district court has several options to ameliorate any resulting prejudice, including prohibiting the State from introducing the undisclosed material. *See* NRS 174.295(2). "The district court has broad discretion in fashioning a remedy under this statute; it does not abuse its discretion absent a showing that the State acted in bad faith or that the nondisclosure caused substantial prejudice to the defendant which was not alleviated by the court's order." *Evans v. State*, 117 Nev. 609, 638, 28 P.3d 498, 518 (2001), *overruled on other grounds by Lisle v. State*, 131 Nev. 356, 366 n.5, 351 P.3d 725, 732 n.5 (2015).

Here, ten days before trial, Smith filed a notice of intent to present an alibi defense, which involved witness testimony that he was at home during the burglaries. On the second day of trial, the State provided the defense recordings of jail calls wherein Smith discussed his alibi with that witness. The State contended the recordings only became relevant once Smith filed his alibi notice. The district court determined that the State had not acted in bad faith and that the late disclosure did not prejudice Smith. The record supports the district court's conclusion. Therefore, we conclude the district court did not abuse its discretion in denying Smith's motion to exclude the jail calls.

*Prosecutorial misconduct*

Next, Smith argues that prosecutorial misconduct warrants reversal. In reviewing claims of prosecutorial misconduct, this court must determine whether the prosecutor's conduct was improper and, if so,

whether the conduct warrants reversal. *Valdez v. State*, 124 Nev. 1172, 1188, 196 P.3d 465, 476 (2008).

First, Smith contends that the State improperly disparaged defense counsel by arguing that Smith was trying to distract the jurors from the evidence and invite speculation. This court has been "critical of the prosecution for disparaging legitimate defense tactics." *Barron v. State*, 105 Nev. 767, 780, 783 P.2d 444, 452 (1989). In this case, after describing the evidence, the prosecutor argued that defense counsel would try to "muddy up" the evidence and ask the jury to speculate and apply a higher standard when reaching a verdict. The prosecutor also commented in rebuttal that defense counsel's argument "was quite a show" and compared defense counsel to a photographer who "waves the little bunny" to distract a child before taking a picture. We conclude these comments were improper. *See id.* (providing that the prosecution has a "duty not to ridicule or belittle the defendant or his case"). However, we also conclude these comments do not warrant reversal. *See Valdez*, 124 Nev. 1189, 196 P.3d at 476 (providing that we review prosecutorial misconduct for harmless error, and "we will reverse only if the error substantially affects the jury's verdict"). Given the overwhelming evidence of guilt, we are convinced the prosecutor's comments did not substantially affect the jury's verdict. The State presented surveillance video of each burglary, and the evidence connected Smith's vehicles to the crimes. *See King v. State*, 116 Nev. 349, 356, 998 P.2d 1172, 1176 (2000) (providing that prosecutorial misconduct may be harmless where there is overwhelming evidence of guilt). Moreover, the district court instructed the jury to focus on the evidence and that argument is not evidence. *See Summers v. State*, 122 Nev. 1326, 1333, 148 P.3d 778, 783 (2006) (we presume jurors follow the district court's instructions).

Second, Smith contends that the prosecutor made an improper golden rule argument and invited the jurors to consider Smith's potential future victims. *See Lioce v. Cohen*, 124 Nev. 1, 22, 174 P.3d 970, 984 (2008) ("An attorney may not make a golden rule argument, which is an argument asking jurors to place themselves in the position of one of the parties."); *Schoels v. State*, 114 Nev. 981, 988, 966 P.2d 735, 740 (1998) ("A prosecutor may not argue or suggest to the jury that the jury is or would be responsible for any future victims of the defendant."). In this case, the prosecutor asked the jurors to think about the victims and other people working in random professions. After Smith objected, the district court cautioned the prosecutor. Nevertheless, the prosecutor persisted by asking the jurors to think about people working hard to achieve the American dream while Smith attempted to take a shortcut by stealing property. While this argument was unnecessary and potentially improper, the comments did not affect Smith's substantial rights. *See* NRS 178.598 (providing that an error "which does not affect substantial rights shall be disregarded"). Therefore, even if these comments were improper, we conclude any error was harmless for the reasons discussed above.

*Cumulative error*

Finally, Smith argues that cumulative error requires reversal. "The cumulative effect of errors may violate a defendant's constitutional right to a fair trial even though errors are harmless individually." *Valdez*, 124 Nev. at 1195, 196 P.3d at 481 (internal quotation marks omitted). This court considers three factors when considering a claim of cumulative error: "(1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged." *Id.* (internal quotation marks omitted). While the charged crimes are serious in nature, the State presented compelling evidence of Smith's guilt and we conclude that the

SUPREME COURT
OF
NEVADA

(O) 1947A

6

cumulative effect of the two identified instances of prosecutorial misconduct did not deprive Smith of his right to a fair trial. Accordingly, we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Parraguirre

_____, J.
Hardesty

_____, J.
Cadish

cc:    Hon. Kathleen M. Drakulich, District Judge
       Washoe County Public Defender
       Attorney General/Carson City
       Washoe County District Attorney
       Washoe District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A