137 Nev., Advance Opinion 68

IN THE SUPREME COURT OF THE STATE OF NEVADA

OSBALDO CHAPARRO,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 81352

**FILED**

NOV 10 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of sexual assault, battery with the intent to commit sexual assault upon a victim age 16 or older, and open or gross lewdness. Second Judicial District Court, Washoe County; Egan K. Walker, Judge.

*Affirmed.*

John L. Arrascada, Public Defender, and Kathryn Reynolds, Deputy Public Defender, Washoe County,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Christopher J. Hicks, District Attorney, and Jennifer P. Noble, Chief Appellate Deputy District Attorney, Washoe County,
for Respondent.

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, STIGLICH, J.:

It is well settled that a defendant has the right to be present at all critical stages of a criminal proceeding, including the sentencing hearing. In this opinion, we consider whether the defendant's right to be

21-32276

present was violated when the sentencing hearing was conducted by simultaneous audiovisual transmission over the Zoom videoconferencing platform due to administrative orders issued by the district court forbidding in-person hearings because of the COVID-19 pandemic. Appellant Osbaldo Chaparro was convicted after a jury trial in February 2020. His sentencing hearing took place in May 2020. All contemporary readers of this opinion will instantly understand the import of those dates: the onset of the COVID-19 pandemic in March 2020 impacted nearly every area of life. The criminal justice system was no exception. While his trial occurred in person and in court, Chaparro was sentenced in a hearing conducted over Zoom. Because we conclude that Chaparro's sentencing hearing was fair and just considering the surrounding circumstances, he is not entitled to relief on this claim.

We also consider several challenges related to Chaparro's trial. We conclude that the district court properly admitted evidence of Chaparro's previous conviction for battery with intent to commit sexual assault. We further conclude that the district court did not err in limiting inquiry into Chaparro's prior conviction that the court had determined would be admitted as evidence, as a party may not pre-try its case with the jury during voir dire. Nevertheless, we direct that district courts should not categorically limit questions about jurors' views concerning whether a defendant has prior convictions. And we recognize that inconclusive DNA evidence may be relevant and admissible where permitted by the rules of evidence, as here. Accordingly, we affirm.

## BACKGROUND

In December 2016, L.L. and a friend stayed at a hotel in downtown Reno. In the early morning hours of December 17, L.L. was walking alone towards the Harrah's casino when Chaparro grabbed her. Chaparro groped L.L.'s buttocks and breasts, reached under her dress and inside her tights, and digitally penetrated her. L.L. struggled and yelled that she would call 9-1-1. Chaparro responded, "[W]ho are they going to believe, me or you?" When L.L.'s friend approached, Chaparro hurried off. L.L. reported the assault and underwent a sexual assault exam that same morning. Harrah's security system captured the incident along with footage.

The State charged Chaparro with sexual assault, battery with the intent to commit sexual assault upon a victim age 16 or older, and open or gross lewdness. Before trial, the State moved to admit evidence of Chaparro's 2011 conviction for battery with the intent to commit sexual assault. In that instance, Chaparro groped and accosted P.J. in the parking lot of the Nugget Casino Resort. Chaparro opposed the motion, arguing the evidence was unfairly prejudicial, but the district court granted the State's motion and allowed P.J. to testify at trial. At trial, Chaparro did not dispute that he was in the security footage or that he had committed open or gross lewdness. Rather, Chaparro argued that he neither penetrated L.L. nor intended to do so and was therefore innocent of sexual assault and battery with the intent to commit sexual assault upon a victim age 16 or older.

The jury convicted Chaparro of all charges on February 14, 2020. In March 2020, the COVID-19 crisis prompted courts across the country to consider alternatives to in-person hearings. The Second Judicial District Court originally hoped to proceed with in-person appearances for

SUPREME COURT
OF
NEVADA

(O) 1947A

"essential case types and hearings," including criminal sentencings. *See In re Second Judicial District Court's Response to Coronavirus Disease (COVID-19)*, Administrative Order 2020-2 (Mar. 16, 2020).[1] But it soon ordered *all* hearings to "be conducted by alternative means to in-person hearings." *See In re Second Judicial District Court's Response to Coronavirus Disease (COVID-19)*, Administrative Order 2020-02(A) (Apr. 9, 2020). Chaparro's sentencing hearing was held on May 20, 2020, over Zoom. Chaparro joined the hearing from a jail courtroom and was able to communicate confidentially with counsel via a headset, as well as see and hear the other participants. The other participants could likewise see and hear Chaparro. Members of the public who chose to watch, including Chaparro's friends and family, could also see and hear Chaparro, the attorneys, and the judge, but they could not themselves be seen or heard by Chaparro. Chaparro objected to the use of Zoom instead of an in-person hearing, stating that he would like to be able to see his supporters, but the district court overruled the objection and proceeded with the hearing. The district court sentenced Chaparro to an aggregate sentence of life with parole eligibility after 12 years. This appeal follows.

## DISCUSSION

*Chaparro's due process challenge to the sentencing hearing over Zoom*

We begin at the end, with Chaparro's sentencing hearing. Chaparro argues that the district court's decision that the hearing proceed

---

[1]The Second Judicial District Court's COVID-19 orders are available at https://www.washoecourts.com/main/covid19response.

over Zoom violated his due process right to be present.[2] Chaparro argued he did not think it was "fair . . . that I have to do something by video and audio/visual because of a pandemic. That's not my fault. . . . [T]his isn't what, you know, it should be like." The district court overruled Chaparro's objection, stating—

> I intend to proceed to sentencing today, because I cannot predict with any reasonable certainty when in the future we can conduct an in-person sentencing.
>
> And, in fact, it is more valuable to have resolution in your case for purposes of vesting jurisdiction for purposes of an appeal that I know you want to take, for example, for finality for the victims in this case and for a variety of reasons. It makes no sense to continue this to a date uncertain in the future, which we cannot predict. . . .
>
> [U]nder the circumstances, it is the best option available.

"A criminal defendant has the right under the Confrontation Clause of the Sixth Amendment and the Due Process Clauses of the Fifth and Fourteenth Amendments to be present at every stage of the trial." *Collins v. State*, 133 Nev. 717, 719, 405 P.3d 657, 661 (2017); *see also United States v. Gagnon*, 470 U.S. 522, 526 (1985); *Illinois v. Allen*, 397 U.S. 337, 338 (1970); NRS 178.388(1). A sentencing hearing is a critical stage of the

---

[2]Chaparro also raises a violation of his confrontation rights. He raises this claim for the first time on appeal, and we accordingly decline to consider it. *See Rippo v. State*, 113 Nev. 1239, 1260, 946 P.2d 1017, 1030 (1997) (declining to consider appellate claim where objection was not made below). Insofar as Chaparro invokes *Lipsitz v. State*, that decision is distinguishable, as it concerned whether a *witness* could testify remotely *at trial*. *See* 135 Nev. 131, 442 P.3d 138 (2019); *cf. Summers v. State*, 122 Nev. 1326, 1333, 148 P.3d 778, 783 (2006) (concluding that right to confrontation does not apply in capital sentencing proceedings).

proceedings, *see Cunningham v. State*, 94 Nev. 128, 130, 575 P.2d 936, 938 (1978), and thus a defendant has the right to be present for sentencing. The right to be present is not absolute, however. *Gallego v. State*, 117 Nev. 348, 367, 23 P.3d 227, 240 (2001), *abrogated on other grounds by Nunnery v. State*, 127 Nev. 749, 263 P.3d 235 (2011). "[T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Gagnon*, 470 U.S. at 526 (alteration in original) (quotation marks omitted); *see also Kirksey v. State*, 112 Nev. 980, 1000, 923 P.2d 1102, 1115 (1996) ("The due process aspect has been recognized only to the extent that a fair and just hearing would be thwarted by the defendant's absence.").

We thus consider whether Chaparro's hearing was fair and just despite its unorthodoxy and conclude that the sentencing hearing was appropriate considering the circumstances. Chaparro was able to be heard, to be seen, to confidentially communicate with counsel, and to speak on the record. *Cf. People v. Lindsey*, 772 N.E.2d 1268, 1276-79 (Ill. 2002) (holding the due process right to be present was not violated where defendant participated in critical stages of arraignment and jury waiver by audiovisual transmission and "was able to interact with the court with relative ease," and noting similar holdings by other state supreme courts). Faced with an administrative order prohibiting in-person hearings, the district court balanced Chaparro's right to be sentenced without unreasonable delay, *cf.* NRS 176.015(1), his desire to appeal the conviction, and the risk of furthering the spread of a contagious disease with his right to be present at the hearing and the prospect of an indefinite delay. *See Bonilla v. State*, 141 N.Y.S.3d 289, 291 (Ct. Cl. 2021) (recognizing the Hobson's choice foisted on courts by the pandemic between exposing the

SUPREME COURT
OF
NEVADA

(O) 1947A

public to a dangerous disease and delaying court proceedings and praising virtual proceedings as a safe way to provide access to courts during the crisis). Chaparro does not allege that he was prevented from presenting argument or evidence on his behalf because of the way in which the hearing was conducted. We note that the fairness and justness of a given proceeding cannot be divorced from the circumstances in which the proceeding takes place, and acknowledge the realities of this moment in assessing the district court's decision to conduct the sentencing hearing over Zoom. *See Snyder v. Massachusetts*, 291 U.S. 97, 116 (1934) ("Due process of law requires that the proceedings shall be fair, but fairness is a relative, not an absolute, concept. It is fairness with reference to particular conditions or particular results."). Given the limited possibilities created by unprecedented emergency circumstances, we conclude that a fair and just hearing was not thwarted by Chaparro's absence from the courtroom.[3]

*The district court did not abuse its discretion in admitting testimony regarding the prior assault and conviction*

We turn now from the sentencing hearing to the trial. Chaparro argues that the district court abused its discretion in admitting victim testimony regarding his 2011 conviction for battery with the intent to commit sexual assault. The victim in that battery, P.J., testified at this trial

---

[3]Chaparro also argues that he had a right to the in-person presence of friends and family, but he does not provide supporting authority for the expansion of the right to be present to third parties, and we therefore decline to consider this claim. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987). Similarly, Chaparro makes a single reference to his right to a hearing open to the public, *see United States v. Rivera*, 682 F.3d 1223, 1225 (9th Cir. 2012) (noting that the right to a public trial extends to sentencing), but he does not accompany this reference with supporting authority or cogent argument, and we decline to consider the claim. *See Maresca*, 103 Nev. at 673, 748 P.2d at 6.

that Chaparro approached her in the parking lot of a casino. She testified that Chaparro shoved her into her own car, grabbed her breast, and laid on top of her such that she could feel his erection, all while saying "relax and let it happen." Chaparro left when she yelled and struggled.

"NRS 48.045(3) unambiguously permits the district court to admit prior sexual bad acts for propensity purposes in a criminal prosecution for a sexual offense." *Franks v. State*, 135 Nev. 1, 4, 432 P.3d 752, 755 (2019). And each count charged against Chaparro was a "sexual offense" under NRS 48.045(3) and NRS 179D.097, as was the conviction in the 2011 case. This court reviews a district court's decision to admit evidence "for an abuse of discretion or manifest error." *Thomas v. State*, 122 Nev. 1361, 1370, 148 P.3d 727, 734 (2006). In determining whether to admit a prior sexual offense pursuant to NRS 48.045(3), the district court must (1) make a preliminary finding that the prior sexual offense is relevant, and (2) find "that a jury could reasonably find by a preponderance of the evidence that the bad act constituting a sexual offense occurred." *Franks*, 135 Nev. at 5, 432 P.3d at 756. Finally, the district court should evaluate whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice by considering

> (1) the similarity of the prior acts to the acts charged, (2) the closeness in time of the prior acts to the acts charged, (3) the frequency of the prior acts, (4) the presence or lack of intervening circumstances, and (5) the necessity of the evidence beyond the testimonies already offered at trial.

*Id.* at 6, 432 P.3d at 756-57 (quoting *United States v. LeMay*, 260 F.3d 1018, 1028 (9th Cir. 2001) (quotation marks omitted)).

Chaparro does not dispute that his previous sexual offense was relevant or that a jury could find by a preponderance of the evidence that

SUPREME COURT
OF
NEVADA

(O) 1947A

the offense occurred. Instead, he argues that evidence of the previous sexual offense was not necessary to the State's case and that the district court erred in evaluating whether the probative value of his previous sexual offense was outweighed by the danger of unfair prejudice. We disagree. Initially, we note that the factors for evaluating whether the probative value is substantially outweighed by the danger of unfair prejudice are not elements to be met before evidence is admissible but considerations for the district court to weigh. Turning to the district court's evaluation of the factors, the court noted the similarities in the previous assault and the assault of L.L.—both occurred near casinos, when the women were alone, and Chaparro talked to both women during the attacks. The assaults occurred approximately five years apart, and nothing in the record shows intervening circumstances affecting the balance of the previous crime's probative value and the risk of prejudice. While the State had other evidence of Chaparro's guilt, including the security footage and Chaparro's concession to the open or gross lewdness charge, the previous conviction for battery with the intent to commit sexual assault was "simply . . . helpful or *practically necessary*" to show Chaparro's intent in assaulting L.L. and his propensity to commit the crime. *Franks*, 135 Nev. at 7, 432 P.3d at 757 (quotation marks omitted). Accordingly, we conclude the district court did not abuse its discretion in admitting this evidence at trial.

*The district court did not err in limiting voir dire*

By the time of voir dire, Chaparro was aware that the district court would allow trial testimony by P.J. regarding the 2011 battery with intent to commit sexual assault. Chaparro argues that he was improperly barred from asking prospective jurors questions regarding the effect evidence of that conviction might have on their deliberation in this case.

This matter was discussed in camera. The district court noted Chaparro's objection and barred his proposed questioning on the previous conviction. The court determined that such questions would "pre-try facts of [the] case" and that propensity evidence is significant enough that it "would be unnecessarily volatile with this or any other jury" "to ring the bell of Mr. Chaparro's conviction for battery to commit sexual assault when he stands accused of the same thing." Chaparro argued that a fair trial required ensuring that the empaneled jury be able to deliberate only on the facts of this offense, despite knowing of his prior conviction for the same offense.

NRS 175.031 provides that "[t]he court shall conduct the initial examination of prospective jurors, and defendant or the defendant's attorney and the district attorney are entitled to supplement the examination by such further inquiry as the court deems proper. Any supplemental examination must not be unreasonably restricted." Voir dire serves to determine whether jurors "can and will, in accordance with their oath, render to the defendant and the state a fair and impartial trial on the facts allowed to be presented to them by the court." *Oliver v. State*, 85 Nev. 418, 422, 456 P.2d 431, 434 (1969). Both the scope and method of voir dire are within the district court's discretion, *Salazar v. State*, 107 Nev. 982, 985, 823 P.2d 273, 274 (1991), and we review for an abuse of discretion or a showing that the defendant was prejudiced, *Leonard v. State*, 117 Nev. 53, 64, 17 P.3d 397, 404 (2001).

We conclude that the district court appropriately limited Chaparro from inquiring into specific evidence that would be presented at trial. *See Witter v. State*, 112 Nev. 908, 915, 921 P.2d 886, 892 (1996) (concluding that parties may not ask jurors about hypothetical facts that

10

would reveal whether a potential juror would find the defendant guilty because such a question goes "beyond determining whether a potential juror would be able to apply the law to the facts of the case"), *abrogated on other grounds by Nunnery*, 127 Nev. 749, 263 P.3d 235. As noted by the district court here, that Chaparro was previously convicted of the same offense he stood accused of had significant potential to influence the jury. This posed a serious risk of causing jurors to prejudge the facts of the case.[4] *See Browning v. State*, 124 Nev. 517, 531 n.32, 188 P.3d 60, 70 n.32 (2008) (impliedly recognizing that it is error to ask a potential juror to prejudge the merits of a case); 58 Am. Jur. 3d *Proof of Facts* § 21 (2021 Supp.) (observing that it is universally recognized that voir dire may not be used to pre-try the case). In doing so, this line of questioning risked depriving Chaparro of an impartial jury. *See People v. Carasi*, 190 P.3d 616, 632 (Cal. 2008) (observing that voir dire seeks to uncover jurors' views in the abstract to ensure that they consider the facts with an open mind and that this aim is undermined by overly specific questions that expose the facts of the case). Rather, Chaparro could have protected his interest in ensuring that jurors apply the law to the facts of the case by voir dire questions regarding a potential juror's perspective on defendants with prior convictions, without specifically inquiring into his own previous conviction. The district court did not categorically obstruct inquiry into the general issue of potential jurors' views on defendants with previous convictions and thus did not err here. *See id.* at 632-33 (recognizing that district courts err in categorically limiting inquiry into case-specific issues). Accordingly, we conclude that

---

[4]This risk is exacerbated by the fact that this "evidence" would be received by the jury during voir dire without context or instruction from the court as to its proper use.

Chaparro has not shown that the district court abused its discretion or that he was prejudiced.

*The district court did not abuse its discretion in allowing testimony on inconclusive DNA evidence*

The pair of tights L.L. wore during the incident were examined for DNA evidence. The results were inconclusive, showing a mixture of DNA for which no person could be excluded. Chaparro argues that the district court abused its discretion in admitting the evidence because the results were inconclusive and could not have any effect on the probability that he digitally penetrated L.L.

Again, when reviewing a district court's decision to admit evidence, this court reviews "for an abuse of discretion or manifest error." *Thomas*, 122 Nev. at 1370, 148 P.3d at 734. Evidence that is relevant is generally admissible. NRS 48.025(1). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." NRS 48.015. Whether inconclusive DNA evidence is relevant is a question of first impression for this court.[5]

Other courts considering this question have concluded that such "evidence may be independently relevant to show that police conducted a thorough investigation." *People v. Marks*, 374 P.3d 518, 524 (Colo. App.

---

[5]Chaparro points us to *Valentine v. State*, 135 Nev. 463, 472, 454 P.3d 709, 718 (2019), the only instance where this court has addressed inconclusive DNA evidence. However, that matter involved an entirely different question. In *Valentine*, we found prosecutorial misconduct when the State encouraged jurors to look at an inconclusive DNA report and "[m]ake your own determination" as to what they, as untrained laypersons, believed it proved. *Id.* (emphasis omitted). But we did not address the admissibility of that evidence in the first place.

2015); *accord Commonwealth v. Cavitt*, 953 N.E.2d 216, 231 (Mass. 2011) (providing that when the thoroughness of an investigation is challenged, "DNA test results, even those that are inconclusive, [are] relevant and probative to establishing the integrity and adequacy of the police investigation"). We find this conclusion balances the interests relevant to this question nicely. Inconclusive results may be of minimal probative value to a defendant's guilt or innocence, but they may be relevant to show the jury the thoroughness of the steps taken by law enforcement in order to investigate the victim's account.[6]

Independent from the relevance of showing a thorough investigation, inconclusive evidence may be relevant to the State's presentation of a complete story regarding a particular piece of evidence.[7] In *Old Chief v. United States*, 519 U.S. 172, 188-89 (1997), Justice Souter eloquently described this dynamic:

> [T]here lies the need for evidence in all its particularity to satisfy the jurors' expectations about what proper proof should be. Some such demands they bring with them to the courthouse, assuming, for example, that a charge of using a firearm to commit an offense will be proven by introducing a gun in evidence. A prosecutor who fails to produce one, or some good reason for his

---

[6]We note that this determination does not alter our holdings on course-of-investigation evidence. *See, e.g., Collins*, 133 Nev. at 726, 405 P.3d at 666 ("Course-of-investigation testimony does not give carte blanche to the introduction of unconfronted hearsay, or evidence concerning matters irrelevant to guilt or innocence." (citations omitted)).

[7]Our determination in this regard does not affect our previous holdings regarding the "complete story of the crime" doctrine. *See, e.g., Bellon v. State*, 121 Nev. 436, 444, 117 P.3d 176, 181 (2005) (discussing the doctrine and providing that it must be construed narrowly).

> failure, has something to be concerned about. . . . The use of witnesses to describe a train of events naturally related can raise the prospect of learning about every ingredient of that natural sequence the same way. If suddenly the prosecution presents some occurrence in the series differently, as by announcing a stipulation or admission, the effect may be like saying, "never mind what's behind the door," and jurors may well wonder what they are being kept from knowing.

This concern is greater today than when Justice Souter wrote for the Court in 1997, due to the so-called "CSI effect." *See generally* Clifford S. Fishman & Anne T. McKenna, 7 *Jones on Evidence* § 60:46(a) (7th ed. 2019) ("But evidence is also relevant if the absence of such evidence might lead a jury to make negative assumptions about the party with the burden of producing evidence."). Public fascination with forensic technology has led to increased juror expectations that every case involves forensic evidence and to the risk that jurors may make negative assumptions about the State's case when forensic evidence is not presented. *See id.*

Here, L.L. testified that Chaparro pulled down her tights and digitally penetrated her. A Sexual Assault Nurse Examiner testified that she collected the tights L.L. wore during the incident within hours of the assault. The DNA results from the tights were inconclusive as to possible contributors but showed the thoroughness of the investigation and completed the "story" of the evidence already presented regarding L.L.'s tights. Therefore, the inconclusive DNA evidence was relevant.

Chaparro also argues that the danger of undue prejudice substantially outweighed the probative value of the inconclusive DNA evidence. We disagree. As the video evidence showing that Chaparro was the man touching L.L. was not in dispute and the DNA evidence did not inculpate Chaparro, the risk of unfair prejudice did not outweigh the

relevance of the inconclusive DNA evidence. *See* NRS 48.035(1). We conclude the district court did not abuse its discretion in admitting this evidence.

*Cumulative error*

Finally, Chaparro contends that cumulative error denied him a fair trial. Because we have rejected Chaparro's assignments of error, we conclude that his allegation of cumulative error lacks merit. *See United States v. Rivera*, 900 F.2d 1462, 1471 (10th Cir. 1990) ("[A] cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors.").

*CONCLUSION*

Unusual, historic circumstances can require unusual, temporary accommodations. We conclude that Chaparro was not denied a fair and just sentencing hearing where a pandemic made his physical presence at the hearing unsafe and he was provided with an appropriate alternative, in light of the extraordinary circumstances of the moment. We further apply the analysis set forth in *Franks v. State*, 135 Nev. 1, 432 P.3d 752 (2019), and conclude that the district court did not err in admitting evidence of Chaparro's prior conviction for battery with intent to commit sexual assault. And we determine that while district courts should not categorically limit inquiry during voir dire into jurors' views regarding defendants with prior convictions, the district court did not err in this regard here when it barred inquiry into their views as to Chaparro's prior conviction because that would have risked having jurors prejudge the evidence, depriving Chaparro of an impartial jury. Finally, we affirm the

conviction and clarify that inconclusive DNA evidence may be admitted where relevant and otherwise in accord with the rules of evidence.

_____, J.
Stiglich

We concur:

_____, C.J.
Hardesty

_____, J.
Cadish

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Silver

_____, J.
Herndon

SUPREME COURT
OF
NEVADA

(O) 1947A