Filed 6/22/22 (opinion on rehearing)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>CHRISTOPHER LEE WHITMORE,<br><br>  Defendant and Appellant. | G059779<br><br>(Super. Ct. No. 20NF0367)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, John Dorsey Conley, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Robert V. Vallandigham, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael P. Pulos and Joseph C. Anagnos, Deputy Attorneys General, for Plaintiff and Respondent.

\*  \*  \*

A jury convicted appellant Christopher Whitmore of rape, false imprisonment, and other crimes. After trial, Whitmore made a motion under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) to replace his appointed counsel; he also moved for a new trial. Because of circumstances related to the ongoing COVID-19 pandemic, Whitmore was not physically present in the courtroom when the trial court heard those motions in late December 2020; instead, Whitmore reluctantly appeared via video for the hearing and at sentencing. The court denied Whitmore's motions and sentenced him to 10 years in prison.

Whitmore contends the trial court erred in overruling his demand to be personally present in the courtroom for the hearing on his posttrial motions and at sentencing. He also contends that the court abused its discretion in denying his *Marsden* motion, and that insufficient evidence supports his conviction for false imprisonment. In our original opinion, filed on April 29, 2022, we found no reversible error and therefore affirmed the judgment.

Whitmore filed a petition for rehearing. Among other things, he argued that while his appeal was pending, the Legislature amended Penal Code[1] section 1170, subdivision (b), to make the middle term the presumptive sentence unless certain circumstances exist. Whitmore contended those amendments apply retroactively to him and require remand for resentencing.

We granted rehearing, which vacated our opinion by operation of law. After considering the matter, we agree with Whitmore that the recent amendments to section 1170, subdivision (b), apply here. Accordingly, we vacate the imposed sentence and remand the matter for resentencing. In all other respects, the judgment is affirmed.

---

[1] All further undesignated statutory references are to this code.

## FACTS

Whitmore and P.S. began having sex when P.S. was about 15 years old. Whitmore rented a room in P.S.'s mother's house. He told P.S. he was 28 years old, when he was instead closer to 40. During their relationship, Whitmore verbally abused P.S. and berated her if she talked to other men. P.S. wanted to end things with Whitmore, but she was afraid to do so because they lived under the same roof.

After P.S. turned 18, she asked that her mother order Whitmore to leave their house; her mother did, and Whitmore moved out. P.S. and her mother then reported Whitmore to law enforcement. Whitmore was arrested and ultimately convicted of having unlawful sexual intercourse with a minor.

After reporting Whitmore to the police, P.S. learned he had impregnated her. When P.S. decided to have the baby, her mother forced her to leave their house. Feeling as though she had nowhere else to go, P.S. returned to Whitmore, who then persuaded P.S. to have his restraining order modified to allow for peaceful contact.

Their relationship soon became violent. On one occasion in December 2018, Whitmore punched P.S. in the face, twisted her arm as if to break it, and then disappeared with their infant son for a week. The following month, after having a disagreement about custody, Whitmore punched P.S. in the stomach and on her legs.

P.S. eventually broke up with Whitmore and refused to talk with him about her personal life. He nevertheless continued to make repeated unwanted sexual advances toward her and tried to find out who she was dating.

In early 2020, Whitmore invited P.S. on a family trip to Disneyland to celebrate their son's second birthday. P.S. accepted the invitation but rejected Whitmore's suggestion that they act as if they were still a couple.

Whitmore drove P.S. and their son from Northern California to Anaheim, where Whitmore and his other family members had rented hotel rooms. P.S. felt

3

uncomfortable sleeping in the same room with Whitmore, so she made plans to spend the night with a male friend.

Later that evening when they were in the hotel room with their son, P.S. told Whitmore that she would not stay in the hotel room with him. Whitmore tried to convince her to stay. P.S. was afraid Whitmore might hurt her, given that he had assaulted her in the past. His size and strength also intimidated her. Whitmore weighed over 200 pounds, was stronger than P.S., and was about six inches taller than her. When P.S. tried to leave, Whitmore stood between her and the hotel room door, forcefully snatched her cellphone from her hand, and pushed her away from the door. All the while, their son was sleeping in one of the beds in the room.

P.S. convinced Whitmore to return her phone so she could cancel an Uber. She then texted the man she had planned to spend the night with, "'I'm sorry but I can't go. My BD [baby daddy] is going to put his hands on me if I leave.'"

As P.S. was sending another text, Whitmore approached her from behind; he hovered over her shoulder and snatched the phone away from her again, commenting, "'It didn't [look] like you were cancelling an Uber.'" Whitmore then took P.S.'s phone out of its case, threw the phone case at P.S., and hid the phone in his suitcase.

When Whitmore took a shower, P.S. did not try to leave the hotel room because Whitmore could see her from the bathroom. At one point, Whitmore stepped out to check on her. After his shower, Whitmore started yelling at P.S., calling her a bitch, a prostitute, and disgusting. He told her to stop playing the victim and added that she would have to "fuck" him to get her phone back. This went on for about 20 minutes. P.S. did not try to leave, as she was afraid Whitmore would either prevent her from leaving, or from seeing their son if she left.

After Whitmore fell asleep, P.S. tried to use the hotel phone to call for help, but the phone made a loud dial tone, so she hung up. She also tried to unlatch the door,

4

but that made a loud noise as well. P.S. searched Whitmore's belongings for her phone without success. She eventually got into bed with their son and fell asleep.

Later that night, Whitmore woke P.S., pulled her into his bed, and repeatedly raped, sodomized, and orally copulated her, despite her verbal and physical resistance. At one point, he raised his hand as if to hit her, but then said, "You know what, I'm not going to leave any bruises on you for you to show anyone else."

The next morning, P.S. dressed and told Whitmore she was going downstairs to smoke marijuana. While in the hotel lobby, P.S. gave a note to a hotel employee that read, "Can you please, please call the police to room 326. I am in there with my son and his father, Christopher Whitmore, who took my phone and raped me. Please tell them to hurry. It's an emergency."

When the police arrived, they found P.S.'s phone in Whitmore's briefcase, and they discovered condoms containing Whitmore's and P.S.'s DNA in a trashcan in the hotel ice machine room. A sexual assault exam also uncovered Whitmore's DNA on P.S.'s vulva.

A jury convicted Whitmore of rape, sodomy by force, forcible oral copulation, false imprisonment, and violation of a protective order. After trial, Whitmore made a *Marsden* motion to replace his appointed counsel, and he moved for a new trial. Because of circumstances related to the COVID-19 pandemic, Whitmore was not physically present in the courtroom when the trial court heard those motions, but rather appeared virtually for those hearings and at sentencing.

The trial court denied Whitmore's motions and sentenced him to 10 years in prison. Whitmore timely appealed.

## DISCUSSION

1.      *Whitmore's Virtual Appearance at the Hearings and Sentencing*

Whitmore first contends the trial court erred in overruling his demand to be personally present in the courtroom for the hearings on his posttrial *Marsden* motion, his motion for new trial, and sentencing.  Before addressing his arguments, we summarize the proceedings below.

a.      *Background*

After trial, Whitmore made a *Marsden* motion to replace his appointed counsel; he also moved for a new trial, asserting P.S.'s testimony was unreliable and inconsistent.  The hearing was set for December 17, 2020, but the trial court did not conduct the hearing that day as planned because Whitmore was neither present in the courtroom nor available for an electronic appearance.  The court noted the jail where Whitmore was being held was on total lockdown until December 27 due to a spike in COVID-19 cases, and the jail staff were unable to move Whitmore to a private room in the jail to allow him to argue his *Marsden* motion in a confidential setting.

Because Whitmore could not be present, either in person or virtually, the trial court suggested postponing the hearing to December 29, by which time the lockdown was expected to be lifted.  Defense counsel conveyed to the court that Whitmore wanted to be present for the proceedings.  The court replied it was not sure a virtual appearance would violate Whitmore's rights but agreed to revisit the issue.  The judge reminded counsel he was retiring on December 31.  He expressed concern that if they did not conduct the hearing before then, the new judge would be at an "extreme disadvantage" in ruling on Whitmore's motions, especially on the new trial motion dealing with credibility issues.

When the case was called again on December 29, the jail lockdown due to COVID-19 had been extended through January 14, 2021, so Whitmore appeared by videoconference from a private room in the jail.  Defense counsel reminded the trial court

6

that Whitmore did not consent to appear by video, that he specifically requested to be physically present in the courtroom, and that he wanted the court to continue the hearing until January 14 or whenever the lockdown might end. The judge denied Whitmore's requests, noting he would be retired by January 14, and a new judge who was unfamiliar with the trial and with defense counsel's performance would be tasked with reading the entire trial transcript to evaluate the *Marsden* motion, the new trial motion, and sentencing.

Whitmore appeared by video for most of the December 29 hearing, which was livestreamed to the public. Although he was not able to see the courtroom when the hearing started, the video connection was adjusted, and Whitmore later confirmed he was able to see and hear the judge. For the portion of the hearing relating to Whitmore's *Marsden* motion, the connection was switched to audio-only to ensure the matter was not livestreamed to the public; Whitmore was able to hear, but not see, the judge for that portion of the proceeding.

As noted, after hearing arguments from Whitmore and counsel, the trial court denied the *Marsden* motion and motion for new trial. The court then sentenced Whitmore to 10 years in prison.

b.     *Analysis*

Whitmore contends he had a right to be physically present in the courtroom at the *Marsden* hearing, the motion for new trial hearing, and at sentencing, and the trial court erred in forcing him to appear virtually without his consent. We find no reversible error.

Whitmore is correct that a criminal defendant has a constitutional and statutory right to be present at sentencing and at other "critical" proceedings in the case. That right arises under various provisions of law, including the due process clause of the Fourteenth Amendment to the United States Constitution and section 15 of article I of the California Constitution. (Cal. Const., art. I, § 15 [a "defendant in a criminal cause has the

7

right . . . to have the assistance of counsel for the defendant's defense [and] to be personally present with counsel"]; *People v. Jennings* (2010) 50 Cal.4th 616, 681-682 (*Jennings*) [due process right to be present arises at stages that are "'critical'" to the trial's outcome and if defendant's presence would contribute to the procedure's fairness]; *People v. Butler* (2009) 46 Cal.4th 847, 861 ["'state constitutional right to be present at trial is generally coextensive with the federal due process right'"].)[2]

The right to be present is also guaranteed by statute. (§ 977, subd. (b)(1) [defendant in felony cases "shall be personally present . . . at the time of the imposition of sentence" and "at all other proceedings" unless that right is properly waived in writing]; § 1193 ["defendant shall be personally present when judgment is pronounced," unless presence is properly waived].)

Notwithstanding the right to be present, "[t]he use of video conferencing and other electronic communication technology has been found to be permissible in certain circumstances and for certain proceedings in both criminal and civil cases. In general, the use of such technology is subject to constitutional considerations . . . and proper security and reliability of the technology with guidelines for the use established by rules of court." (*People v. Sekhon* (2018) 26 Cal.App.5th Supp. 26, 29 (*Sekhon*).)

Among such rules are the emergency rules adopted by the Judicial Council in Spring 2020 in response to the COVID-19 pandemic. (See *E.P. v. Superior Court* (2020) 59 Cal.App.5th 52, 55 (*E.P.*) [discussing authority for and adoption of emergency rules].) These rules allow courts to conduct criminal proceedings remotely (i.e., by

---

[2] The confrontation clause of the Sixth Amendment to the United States Constitution also affords a criminal defendant the right to be personally present at trial if his or her appearance is necessary to prevent interference with his or her opportunity for effective cross-examination. (*Jennings, supra,* 50 Cal.4th at p. 681.) However, Whitmore concedes the confrontation clause is inapplicable to the posttrial proceedings at issue here.

video, audio, or telephonic means), so long as the defendant consents to the remote appearance.  (Cal. Rules of Court, App. I, Emergency rule 3(a).)

In this case, Whitmore made it clear he did not consent to a remote appearance.  Thus, we must determine whether the trial court violated Whitmore's right to be present by conducting the December 29 hearing while he was appearing remotely without his consent.  In other words, does the constitutional and statutory right to be "personally present" at sentencing and for other critical proceedings[3] require a physical presence in the courtroom, as opposed to a video or telephonic presence?

Turning first to Whitmore's constitutional argument, we are not persuaded that his due process rights were violated.  A criminal defendant has a due process right to be present in the courtroom *only* to the extent his absence would thwart the fairness of the hearing.  (*People v. Safety National Casualty Corp*. (2016) 62 Cal.4th 703, 713.)  Given recent improvements in the quality of videoconferencing technology, which generally allows participants to see and hear one another without interruption, we believe requiring the defendant to appear remotely for posttrial and sentencing hearings during a historic public health crisis did not thwart the fairness of the proceeding.  Although there is little authority on point,[4] the few opinions we have found on the subject support our

---

[3] Whitmore cites no authority for the proposition that a hearing on a *Marsden* motion or a motion for new trial constitutes a "critical" proceeding so as to trigger a right to be present, but we will assume for the sake of our analysis that he had such a right at the proceedings in question.

[4] Whitmore did not cite any federal authority holding the federal right to be present requires a physical presence in the courtroom for posttrial motions and sentencing, and we have found none.  That absence of federal case law on point is perhaps not surprising, however.  Rule 43 of the Federal Rules of Criminal Procedure, which requires that the defendant be present at every trial stage and at sentencing, confers even broader rights than the federal constitutional right to be present (*U.S. v. Ornelas* (9th Cir. 2016) 828 F.3d 1018, 1021), and thus may be the more common basis for resolving federal cases involving a defendant's right to be present.

9

conclusion.  (See *Chaparro v. State* (Nev. 2021) 497 P.3d 1187, 1191-1192 (*Chaparro*) [sentencing defendant by Zoom videoconferencing during COVID-19 pandemic was "fair and just despite its unorthodoxy" because defendant "was able to be heard, to be seen, to confidentially communicate with counsel, and to speak on the record," and because of "the limited possibilities created by unprecedented emergency circumstances"]; *People v. Lindsey* (2002) 201 Ill.2d 45, 58-60 [finding no due process violation where the defendant appeared for arraignment via closed circuit television, noting the defendant could see and hear the proceedings and interact with the court with relative ease].)[5]

As the *Chaparro* court put it, "the fairness and justness of a given proceeding cannot be divorced from the circumstances in which the proceeding takes place, and [we must] acknowledge the realities of this moment in assessing the [trial] court's decision to conduct the sentencing hearing over [videoconference]." (*Chaparro, supra,* 497 P.3d at p. 1192.)  In this case, the trial court had to balance Whitmore's right to be physically present against the need to minimize the danger created by the spread of a contagious disease, coupled with the fact that continuing the hearing would have resulted in it being heard by a new judge who was wholly unfamiliar with what happened at trial.  Although Whitmore was not physically present in the courtroom, he was still

---

[5]      See also *U.S. v. Lattimore* (D.D.C. 2021) 525 F.Supp.3d 142, 150 [rejecting defendant's argument that video appearance would hamper his ability to participate in suppression hearing and concluding "there is no reason to think that a video hearing would deprive the defendant of any due process rights"]; *U.S. v. Rosenschein* (D.N.M. 2020) 474 F.Supp.3d 1203, 1209 ["Though presence through a screen is not precisely the same as direct physical presence, the difference between the two is not enough to render the [suppression hearing] fundamentally unfair and does not deprive [d]efendant of due process"]; *Sekhon*, *supra,* 26 Cal.App.5th Supp. at p. 33 [technological advances in videoconferencing equipment "almost eliminat[e] any concerns of a judge not being physically present in the same courtroom" in vehicle infraction trial].

able to be heard, to be seen, to confidentially communicate with counsel, and to speak on the record. Given these highly unusual circumstances, we do not believe Whitmore's physical absence thwarted the fairness of the hearing.

As for Whitmore's statutory right to be present, the People concede the trial court violated state law by forcing him to appear remotely without his consent, and we agree. The statutes in question—sections 977 and 1193—use the phrase "personally present," and California courts have interpreted similar statutes as requiring a physical presence in the courtroom. (See *E.P., supra,* 59 Cal.App.5th at pp. 58-59 [juvenile's right under Welf. & Inst. Code § 679 "to be present" at juvenile delinquency proceeding means physically present in the courtroom; hearing could not be conducted via videoconferencing without juvenile's consent]; *In re J.G.* (2008) 159 Cal.App.4th 1056, 1064-1069 [§ 3041.5, subd. (a)(2), which affords inmates the right "to be present" at parole suitability hearing, and § 2911, subd. (e), which affords inmates the right to "personally appear" before the parole hearings board, require a physical presence in the courtroom, such that regulation calling for a telephonic hearing was void]; see also 63 Ops.Cal.Atty.Gen. 193 (1980) [felony defendant's arraignment in municipal court may not be conducted by two-way video between jail and court; "the term 'personally present' necessarily connotes physical or bodily presence and excludes any lesser connotation of presence by electronic imagery or transmission of sound"].)

Given the violation of Whitmore's state law rights, we must consider the question of prejudice. Violations of the state right to be present are reviewed under the *Watson* reasonable probability standard: the matter is reversible only if it is reasonably probable the result would have been more favorable to the defendant absent the error. (*People v. Mendoza* (2016) 62 Cal.4th 856, 902 (*Mendoza*); *People v. Cunningham* (2015) 61 Cal.4th 609, 635; *People v. Davis* (2005) 36 Cal.4th 510, 532-533; see *People*

11

*v. Watson* (1956) 46 Cal.2d 818, 836.)[6] If we were to assume *arguendo* there was a due process violation of Whitmore's right to be present, that violation would be reviewed under the *Chapman* harmless-beyond-a-reasonable-doubt standard. (*Mendoza*, at p. 902; see *Chapman v. California* (1967) 386 U.S. 18, 23.)

We conclude any error in conducting the hearing while Whitmore was appearing remotely without his consent was harmless under either standard. There is no indication in this record that Whitmore's physical presence in the courtroom would have benefited his case in any way or otherwise altered the outcome, nor does the record reflect any difficulties or irregularities attributable to Whitmore's remote appearance. To the contrary, the record shows he was able to effectively understand and meaningfully participate in the hearing, he was adequately represented by and able to communicate with his defense counsel, and he was permitted to address the trial court at length. Although he was not able to see the courtroom when the hearing began, the connection was adjusted and Whitmore confirmed he was able to see and hear the judge (except for the *Marsden* hearing, which was by audio only). Finally, there is no indication that the trial court gave any greater consideration to statements of participants who appeared in

---

[6] Relying on this court's opinion in *People v. Sanchez* (2016) 245 Cal.App.4th 1409 (*Sanchez*), Whitmore contends the harmless error standard does not apply and that the error is subject to per se reversal. *Sanchez* is distinguishable. In *Sanchez*, the defendant was present when judgment was originally imposed, but the trial court refused to allow him to attend the resentencing hearing on remand after one of his convictions was overturned. (*Id.* at p. 1414.) We ordered part of his sentence vacated and remanded the matter to the trial court for resentencing, with the defendant to be present at the hearing. (*Id.* at p. 1418.) This case is different because Whitmore attended his sentencing hearing by video and was able to participate. In *Sanchez* it was impossible to conduct a harmless error analysis since the defendant did not attend the hearing. Here, by comparison, we can analyze whether it is reasonably probable Whitmore would have received a more favorable result had he been physically present in the courtroom. (See also *Mendoza, supra,* 62 Cal.4th at p. 901 ["The high court has never suggested that a defendant's improper absence from any critical stage of the proceedings constitutes structural error requiring reversal without regard to prejudice"].)

12

person. Under these circumstances, Whitmore has failed to demonstrate he was prejudiced by his virtual participation at sentencing, under either *Chapman* or *Watson*.

The fact of the matter, as confirmed by reliable medical and scientific data, is that the COVID-19 pandemic prevented trial courts throughout California from holding in-person hearings safely in December 2020. Although a video appearance is not the same as actual physical presence, the difference between the two under the circumstances present here was not enough to create reversible error in this case.

2. *Whitmore's* Marsden *Motion*

Whitmore's second challenge on appeal relates to the denial of his postverdict *Marsden* motion.

*Marsden* established a defendant's right to raise the issue of ineffective assistance of counsel by means of a motion to discharge his or her attorney and appoint a new one. "'"When a defendant seeks to discharge his appointed counsel and substitute another attorney, and asserts inadequate representation, the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance. [Citation.] A defendant is entitled to relief if the record clearly shows that the first appointed attorney is not providing adequate representation [citation] or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result."'" (*People v. Memro* (1995) 11 Cal.4th 786, 857, overruled on another ground in *People v. Gaines* (2009) 46 Cal.4th 172, 181 fn. 2.)

"[T]he decision whether to permit a defendant to discharge his appointed counsel and substitute another attorney during the trial is within the discretion of the trial court." (*Marsden*, *supra*, 2 Cal.3d at p. 123.) We review the court's decision declining to relieve appointed counsel under the deferential abuse of discretion standard. (*People v. Earp* (1999) 20 Cal.4th 826, 876.)

13

During the *Marsden* hearing, Whitmore asserted that the following acts or omissions constituted deficient performance:  (1) encouraging him not to testify; (2) failing to investigate family court documents, which supposedly would have revealed numerous lies by P.S.; (3) failing to investigate and present his phone records to show how text conversations with P.S. "really went"; (4) failing to challenge P.S.'s "lie[s] to the nurse" who performed the sexual assault exam; (5) failing to present a case-in-chief; and (6) failing to impeach P.S. with preliminary hearing testimony.

After allowing Whitmore to fully state his complaints, defense counsel responded point-by-point:  (1) she advised Whitmore not to testify to avoid impeachment and because P.S. had already been thoroughly impeached (see *People v. Trotter* (1984) 160 Cal.App.3d 1217, 1224 ["Advising a client not to testify does not in and of itself constitute inadequate trial assistance"; "it implies a tactical decision"]); (2) counsel did in fact receive and review the family court documents; (3) counsel worked to unlock and extract data from Whitmore's phone, took snapshots of relevant texts once she was able to do so, and cross-examined P.S. about texts that were helpful to the defense; (4) counsel did confront P.S. with conflicting statements she made to the forensic nurse, but made the tactical decision to steer clear of certain testimony; (5) counsel suggested she did not put on an affirmative case because her investigation yielded either unhelpful information or inadmissible evidence; and (6) counsel did impeach P.S. with preliminary hearing testimony.

These were reasonable explanations for the allegedly deficient acts and omissions.  The trial court invited Whitmore to rebut them, but he declined to do so.  We find no abuse of discretion in the denial of his *Marsden* motion.

3.     *The False Imprisonment Conviction*

Whitmore next contends there is insufficient evidence to support his conviction for felony false imprisonment.  Again, we are not persuaded.

14

Our review of any claim of insufficiency of the evidence is limited. We review "'"'"the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt."'"'" (*People v. Romero* (2008) 44 Cal.4th 386, 399.) "The pertinent inquiry is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (*Ibid.*)

"It is the exclusive function of the trier of fact to assess the credibility of witnesses and draw reasonable inferences from the evidence." (*People v. Sanchez* (2003) 113 Cal.App.4th 325, 330.) "Given this court's limited role on appeal, defendant bears an enormous burden in claiming there was insufficient evidence to sustain his conviction for operating a chop shop. If the verdict is supported by substantial evidence, we are bound to give due deference to the trier of fact and not retry the case ourselves." (*Ibid.*)

"False imprisonment is the unlawful violation of the personal liberty of another." (§ 236.) The offense rises to the level of a felony when "effected by violence, menace, fraud, or deceit." (§ 237.) Because the statute is in the disjunctive, false imprisonment is a felony if committed using either violence or menace. (*Ibid.*)

In this context, "violence" means using physical force greater than the force reasonably necessary to restrain someone. (*People v. Reed* (2000) 78 Cal.App.4th 274, 280.) "The additional force required for felony false imprisonment, as opposed to misdemeanor false imprisonment, may come in the form . . . of simply pulling a victim toward a location when the victim's liberty has already been violated. . . . [S]uch additional and unnecessary force may also arise from sexual assaults suffered by the victim during the course of the defendant's contact with the victim." (*People v. Ghipriel* (2016) 1 Cal.App.5th 828, 834.)

15

"Menace" is a threat of harm express or implied by words or act; an express threat or use of a deadly weapon is not required. (*People v. Islas* (2012) 210 Cal.App.4th 116, 123.) A jury properly may consider a victim's fear in determining whether the defendant expressly or impliedly threatened harm. (*Id.* at p. 127.)

Whitmore contends the evidence does not show he used violence or menace to prevent P.S. from leaving the hotel room. Viewing the evidence in the light most favorable to the prosecution, we disagree. As noted above, when P.S. tried to leave the hotel room, Whitmore pushed her away from the door and forcefully snatched her cellphone from her hand. P.S. was intimidated by Whitmore's size and strength, and she was afraid he would hurt her or prevent her from seeing their son if she tried to leave. P.S. was also especially vulnerable in several respects: she was less than half Whitmore's age, she was shorter and weighed less than him, and he had a history of verbally abusing her, physically assaulting her, and absconding with their child. A reasonable jury could conclude from this evidence that Whitmore violated P.S.'s liberty by violence or menace. Substantial evidence supports the judgment.

4.      *Senate Bill No. 567*

After we filed our initial opinion on April 29, 2022, Whitmore petitioned for rehearing, arguing (among other things) that Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill 567), which amended section 1170, subdivision (b), effective January 1, 2022, applies retroactively and renders his sentence improper. We granted rehearing to consider this argument.

When Whitmore was sentenced in December 2020, the trial court had broad discretion under the previous version of section 1170, subdivision (b), to decide which of the tripartite terms of imprisonment to impose for an offense. (See former § 1170, subd. (b); *People v. Sandoval* (2007) 41 Cal.4th 825, 846-847 (*Sandoval*).) Exercising its discretion, the trial court imposed an eight-year upper term on Whitmore's rape

16

conviction, citing "the longstanding misconduct between the defendant and the young girl."

On January 1, 2022, while Whitmore's appeal was pending, Senate Bill 567 amended section 1170 in several respects. Relevant here is the fact that section 1170, subdivision (b), now makes the middle term the presumptive sentence unless certain circumstances exist, such as if "there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial." (§ 1170, subd. (b)(2).) In his petition for rehearing, Whitmore argues for the first time that this amendment applies retroactively and requires us to remand for resentencing.[7]

This case is not yet final, so Whitmore is entitled to the retroactive application of section 1170, subdivision (b), as amended by Senate Bill 567. (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1039.) Accordingly, we must decide whether the jury unquestionably would have found true beyond a reasonable doubt the aggravating circumstance cited by the trial court—namely, that there was "longstanding misconduct between the defendant and the young girl."

The Attorney General contends the answer is yes and therefore any error in failing to submit sentencing factors to the jury was harmless. We cannot agree. Certainly, there are many references to that alleged longstanding misconduct in the

---

[7]     In response to Whitmore's rehearing petition, the Attorney General argues that Whitmore forfeited this argument by not raising it earlier. Although arguments first raised on rehearing are usually forfeited, we have discretion to consider such arguments if there is good cause to do so. (*Alameda County Management Employees Assn. v. Superior Court* (2011) 195 Cal.App.4th 325, 338, fn.10.) Good cause exists here. Senate Bill 567 took effect on January 1, 2022, two months after this matter was fully briefed. True, Whitmore might have sought leave to file a supplemental brief on the issue, but given the timing, we decline to find a forfeiture.

record, but we cannot determine beyond a reasonable doubt whether the jury would have found that aggravating circumstance true.  (See also *Sandoval, supra*, 41 Cal.4th at p. 840 ["a reviewing court cannot always be confident that the factual record would have been the same had aggravating circumstances been charged and tried to the jury"].)

Thus, we must vacate Whitmore's sentence and remand for the matter for the trial court to resentence him under section 1170, subdivision (b), as amended by Senate Bill 567.  Before resentencing, the trial court must give the prosecution an opportunity to elect whether to accept resentencing on the current record or seek an upper term sentence in compliance with newly amended section 1170, subdivision (b).  On remand, the parties are free to argue for the term they believe is appropriate under the applicable law.

## DISPOSITION

The judgment is affirmed.  The sentence is vacated, and the matter is remanded for the trial court to resentence Whitmore applying section 1170, subdivision (b), as amended by Senate Bill 567.  Following resentencing, the trial court clerk shall prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.


GOETHALS, J.

WE CONCUR:


O'LEARY, P. J.


SANCHEZ, J.

18